## No. 12,476.

CURTIS COAL COMPANY *v.* YAMPA COLLIERIES COMPANY
ET AL.

(18 P. [2d] 323)

Decided December 5, 1932.   Rehearing denied January 7, 1933.

Messrs. GOODING & MONSON, Mr. STEPHEN R. CURTIS, for plaintiff in error.

Mr. JOSEPH K. BOZARD, Mr. GILBERT A. WALKER, for defendants in error.

*In Department.*

Mr. Justice Alter delivered the opinion of the court.

The Curtis Coal Company, a corporation, plaintiff below and plaintiff in error here, brought an action against the Yampa Collieries Company, a corporation, and Gilbert A. Walker, defendants below and defendants in error here, to quiet title to certain personal property, and to restrain defendants from interfering with plaintiff's use and enjoyment thereof. The Curtis Coal Company will hereinafter be referred to as plaintiff, the Yampa Collieries Company as defendant, and Gilbert A. Walker as Walker. Upon the trial, the district court rendered its judgment in favor of Walker, and against plaintiff, for certain of this personal property, to which judgment plaintiff excepted and assigns error here, and, as to the remainder of the personal property, the district court rendered its judgment in favor of plaintiff, and against defendant, to which judgment defendant excepted, and assigns cross-error. It will serve no useful purpose to separately specify each assignment of error and cross-error, because they all relate to the construction placed by the court upon a certain agreement of lease and the relative rights of the parties thereunder.

Plaintiff owned certain coal mining lands in Routt county, upon which, on January 17, 1920, it granted its written lease for mining purposes to defendant, which lease was duly recorded. Because of its length, it will be impractical to set forth the lease in full, but such parts as are necessary for proper consideration of this matter will be specifically noted. The consideration for the granting of the lease was therein specified as: "* * * for and in consideration of the covenants, agreements, payments and royalties hereinafter reserved, and by the party of the second part [defendant] to be kept and performed, * * *." The lease was for a period of twenty years, unless sooner terminated or forfeited for defendant's violation of certain specified terms and conditions, among which were the following:

"The party of the second part [defendant] shall at its own expense and within twelve months succeeding the execution of this agreement, erect the necessary buildings, machinery and appurtenances for the operation of a mine and shall open such mine; * * *." And further:

"The party of the second part [defendant] shall pay to the party of the first part [plaintiff], at its main office, fifteen cents for each and every ton of coal mined from the property and such payments shall be made on or before the fifteenth day of each calendar month for the coal mined during the preceding calendar month; and the said amount per ton shall be paid on a minimum of 40,000 tons for each and every year during the life of this agreement, whether such minimum be taken out during such year or not; such minimum royalties to be paid in advance in the sum of Five Hundred ($500.00) dollars each month: * * *."

The lease further provided:

"It is mutually understood by and between the parties hereto that the fulfillment of each and every of the conditions as herein set forth is a part of the consideration of this lease, and that the failure in any of the same on the part of the, party of the second part shall at once terminate this lease and forfeit the rights of the party of the second part to said premises, and in the construction of this contract time shall be deemed as of the essence thereof, in all particulars.

"In case of the forfeiture by reason of the failure of the party of the second part to keep and perform the covenants and agreements herein set forth, or any of them, the party of the first part shall have the right, thro [thru] itself or its agent or attorney, either with or without process of law, to enter upon and into all of said premises and take full possession thereof, and of all machinery and improvements on the said property; and all machinery and improvements now upon said property, or which may hereafter be placed thereon by the said party of the second part or appurtenant thereto shall

pass to and become the absolute property of the party of the first part without liability to the party of the second part.

"Upon the expiration of the term of this lease (other than by forfeiture) all buildings erected upon said premises shall become the property of the party of the first part and shall not be removed by the party of the second part, and the party of the first part shall have the privilege, if it so desires, to purchase all the machinery and appliances, or any part thereof used in operating the said mine which may be located on the lands belonging to the party of the first part, * * *.

"The said party of the first part shall pay all taxes to accrue upon said lands, and the party of the second part shall pay all taxes to accrue upon the machinery and improvements placed upon or within said lands.

"If the party of the first part shall claim a forfeiture of this lease such claim shall be made in writing within thirty days after the alleged failure of the party of the second part to comply with the terms and conditions of this lease becomes known to the party of the first part, otherwise such claim for forfeiture shall be void; and after notice of forfeiture has been given in writing by the party of the first part to the party of the second part, by reason of the breach of any condition of this lease, said party of the second part shall have thirty days in which to remedy such breach; and if so remedied no forfeiture shall be enforced, provided a breach of the same character shall not have occurred within a period of one year prior thereto."

The undisputed evidence in this case is that defendant failed to pay the minimum royalties of $500 each, due and payable in the months of November and December, 1925, for the respective preceding months of October and November, 1925, and, after several conferences between plaintiff and defendant, respecting the payment of the same and a renewal of the lease term, plaintiff served written notice of forfeiture upon defendant on Janu-

ary 11, 1926. In this written notice, plaintiff claimed title to all machinery, equipment and improvements then on the premises or which had theretofore been placed upon the leased premises by defendant during the term. About December 20, 1925, a group of former employees of defendant engaged Walker to collect past due wages, due them from defendant, and shortly thereafter, Walker went to Denver to confer with Sparling, president of defendant, respecting the payment of his clients' claims. About January 1, 1926, fifty-one pit cars, which were used by defendant in its operation of the coal mine, were removed, at the request of defendant's superintendent, from plaintiff's property. In the latter part of April or early May, 1926, these same pit cars were, by plaintiff, moved again to plaintiff's property. In May, 1927, Walker had the same pit cars taken from plaintiff's property and removed to adjoining property, and this action resulted. On May 2, 1922, defendant executed, and delivered to "The Geo. N. Sparling Coal Co." its three promissory notes for $4,000, $4,000, and $4,100 respectively, due twelve, eighteen, and twenty-four months thereafter, respectively, and to secure the prompt payment thereof, executed and delivered its chattel mortgage in which these same pit cars, together with other property of a similar nature, were included. Sparling was president of defendant and also president of "The Geo. N. Sparling Coal Co.," payee in the promissory notes secured by chattel mortgage. In February, 1926, Walker began an action against defendant, the Geo. N. Sparling Coal Co., and George N. Sparling to recover judgment for the amount due on the wage claims which had been assigned to him. This action was set for trial on May 5, 1927, at which time defendant appeared and executed a bill of sale to thirty-eight pit cars to Walker, the bill of sale expressly reciting that it was subject "to chattel mortgage of The Geo. N. Sparling Coal Co.," and at the same time and place, Sparling, as president of "The Geo. N. Sparling Coal Co.," endorsed "without

recourse'' the three promissory notes mentioned, and delivered to Walker the chattel mortgage securing the same, and thereupon Walker dismissed his action against defendant and others ''with prejudice.''

Plaintiff's contention here, as we understand it, is that the judgment in its entirety should be reversed, because the trial court improperly and incorrectly interpreted and construed the provisions of the lease, while Walker is content as to the judgment and takes the position that it is correct as to him; and defendant's contention is that, notwithstanding the provisions of the lease, the pit cars, for which plaintiff had judgment as against defendant, were ''trade fixtures'' and as such were removable by it at any time prior to the notice of forfeiture of January 11, 1926; the effect and validity of the forfeiture notice and the grounds thereof are also questioned by defendant. It is rather difficult, if not impossible, for us to reconcile the judgments entered by the trial court, for if the provisions of the lease were such as to entitle plaintiff to some of the pit cars which were removed prior to January 11, 1926, it would seem to follow that a proper construction would have entitled it to all of them. Both plaintiff and defendant argue the law of trade fixtures at great length, but we deem a discussion of this unnecessary to a determination of the case.

It should be remembered that the royalty reserved in the lease was not the sole consideration for granting it, because the consideration therein set forth is ''the covenants, agreements, payments and royalties hereinafter reserved, and by the party of the second part to be kept and performed,'' and also that one of the considerations for the granting of the lease was the payment of the sum of $500, as a minimum royalty, on or before the fifteenth day of each calendar month. It should also be remembered that the minimum royalties payable in the months of November and December, 1925, were not paid timely or at all, which fact is admitted. Another of the considerations for the granting of this lease was the cove-

nant and agreement on the part of defendant "at its own expense and within twelve months succeeding the execution of this agreement, erect the necessary buildings, machinery and appurtenances for the operation of a mine and shall open such mine." So far as the record discloses, this condition was complied with in all respects. In another part of the lease, the consideration for its execution is emphasized, for it is said: *"It is mutually understood by and between the parties hereto that the fulfillment of each and every of the conditions as herein set forth is a part of the consideration of this lease, and that the failure in any of the same on the part of the party of the second part shall at once terminate this lease and forfeit the rights of the party of the second part to said premises."* With reference to forfeiture, the lease provides: "If the party of the first part shall claim a forfeiture of this lease such claim shall be made in writing within thirty days after the alleged failure of the party of the second part to comply with the terms and conditions of this lease becomes known to the party of the first part, otherwise such claim for forfeiture shall be void; and after notice of forfeiture has been given in writing by the party of the first part to the party of the second part, by reason of the breach of a*ny condition* of this lease, said party of the second part shall have thirty days in which to remedy such breach; and if so remedied no forfeiture shall be enforced, provided a breach of the same character shall not have occurred within a period of one year prior thereto." It is admitted that the lease condition was breached by defendant when it failed to pay the October, 1925, royalty on November 15, 1925, and it must also be admitted that one of the lease conditions was breached when defendant failed to pay, on or before December 15, 1925, its minimum royalty for the month of November, 1925. Under the provision of the lease just quoted, if the November breach be entirely disregarded, written notice of the December breach was served within the specified time, and was valid, and under the

same provision of the lease, defendant had thirty days within which to remedy it, and this it did not do and has not done. It is unnecessary for us to determine what, if any, rights defendant might have, if it had tendered payment within thirty days after January 11, 1926, for that question is not presented.

Under the circumstances of this case, defendant and those claiming under it are not in position to challenge the effect, force and validity of the forfeiture notice, because no attempt was made on their part to exercise their right to remedy the breach. It remains for us to determine the effect and scope of the forfeiture. The provision of the lease appertaining thereto reads: "In case of the forfeiture by reason of the failure of the party of the second part to keep and perform the covenants and agreements herein set forth, or any of them, the party of the first part shall have the right, * * * to enter upon and into all of said premises and take full possession thereof, and of all machinery and improvements on the said property; and all machinery and improvements now upon said property, or which may hereafter be placed thereon by the said party of the second part or appurtenant thereto shall pass to and become the absolute property of the party of the first part without liability to the party of the second part." It will be remembered that the lease was recorded so that interested parties might ascertain, from an examination of the official records, just what rights were granted to the parties thereto. One of the conditions upon which the lease was granted, and one of the considerations therefor, was that defendant was to "erect the necessary buildings, machinery and appurtenances" which were to become the absolute property of plaintiff, in case of forfeiture. If we should hold, as did the trial court, that Walker was entitled to the pit cars, it would be tantamount to taking from plaintiff one of the stipulated conditions upon which the lease was executed, and one of the considerations that actuated plaintiff in granting defendant the lease.

■■ We have examined the original bill of exceptions in many of the Colorado cases cited by counsel, but find them of no material assistance to us in the determination of this case, for in those cases, the language employed in the leases and contracts is so entirely different from the specific provisions of this lease as to make those cases inapplicable here. Our decisions with reference to "trade fixtures" have no application to this case, because here the parties to the lease contracted and agreed that those articles which we might ordinarily consider "trade fixtures" should not be so considered. If pit cars do not come within the plain meaning of the term "machinery and improvements," when used in connection with a coal mining lease, it is impossible for us to give any force or meaning to it, and it is inconceivable that any articles used in and about a coal mine would pass under the forfeiture clause here. The parties to the lease chose their own language, and it is apparent that they did not intend to rely upon any of our decisions with reference to "trade fixtures" and the rights of lessor and lessee thereto, but chose rather to contract expressly with reference to their respective rights in the premises. The plain provisions of the lease entitled plaintiff to the absolute ownership of the pit cars upon forfeiture, and no action of defendant, amounting to a further breach of his lease agreement, could circumvent this right of ownership. Defendant, by its lease, expressly agreed with plaintiff that it should have some right, the exact nature of which we are not here called upon to determine, in all machinery and improvements which defendant should place upon the leased premises, and in order to enjoy those rights, defendant impliedly agreed that this additional property, placed upon the leased premises, should not be removed, and of this agreement, Walker is charged with knowledge. To say that Walker became entitled to the pit cars, under the circumstances of this case, simply because they had been removed by defendant from the leased premises, in violation of one of the im-

plied conditions of the lease, would be to encourage and reward one for the violation of his own agreement.

The judgment is accordingly reversed, and the cause remanded, with directions to the trial court to enter a judgment herein, in favor of plaintiff and against defendants, Walker and the Yampa Collieries Company, a corporation.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE CAMPBELL and MR. JUSTICE HILLIARD concur.